## STEWART v. NATIONAL SURETY CO. et al.
### No. 7319.

District Court, E. D. Pennsylvania.
Dec. 9, 1932.

Walter Biddle Saul and Saul, Ewing, Remick & Saul, all of Philadelphia, Pa., for plaintiffs.

Harold D. Saylor, Deputy Atty. Gen. of Pennsylvania, and William A. Schnader, Atty. Gen. of Pennsylvania, for defendants.

WELSH, District Judge.

This is a suit primarily to restrain certain defendants, who are officers of the commonwealth of Pennsylvania, from proceeding against a codefendant, the National Surety Company, a corporation of the state of Delaware, of which company the plaintiff, a resident of the state of New Jersey, is a stockholder.

On October 5, 1931, the Franklin Trust Company of Philadelphia failed. Among its depositors was the state of Pennsylvania to the extent of $450,000. Under the law of Pennsylvania, a state depository is required to furnish bond for the security of deposits. The National Surety Company furnished this bond to the amount of $400,000. The terms and conditions of the bond were as follows:

"The condition of this obligation is such that if the above bounden Franklin Trust Co. of Phila. Pa. shall faithfully and honestly keep and account for such funds, moneys, chattels or other property of the Commonwealth of Pennsylvania, which now are or may hereafter from time to time remain on deposit with, or be in the custody and keeping, of the said Franklin Trust Co. and shall pay over, deliver and account for the same, and any and every part thereof, from time to time, at any time when the same shall be demanded, to or upon the order of the said State Treasurer or other State officers by whom such deposit was made as aforesaid, or their successors in office and shall also from time to time, when the same shall be demanded, to or upon the order of the said State Treasurer or other State officers by whom such deposit was made as aforesaid, or their successors in office and shall also from time to time, when the same shall be demanded by the said State Treasurer or other State officers or their successors in office, pay to him or them or to his or their order for the use of the Commonwealth the whole or any part of such sum or sums of money, deposited as aforesaid, as the said Trust Co. may owe to the Commonwealth of Pennsylvania; and shall also pay over to the said State Treasurer, or his successors in office, for the use of the Commonwealth, interest on said moneys at the rate of two per centum per annum payable semi-annually, then this obligation to be void, otherwise to be and remain in full force and virtue. * * *

"And in case of a breach of any of the conditions of the foregoing bond, the said surety holds itself bound as principal for any debts arising thereunder, in the amount aforesaid, and agrees to answer for the same without regard to and independently of any action taken against the said Franklin Trust Company of Philadelphia and whether the said Franklin Trust Company be first pursued or not."

There were a number of other bonds of similar tenor furnished by the National Surety Company and other surety companies for other depositaries, which were paid by the bonding companies. Before payment could be made in the instant case, the plaintiff came to this court for relief.

Under the Constitution of the State of Pennsylvania, the commonwealth has a priority status in all cases where it has a claim against a fund. The plaintiff alleges that notwithstanding the above bond and its conditions, the commonwealth of Pennsylvania has no right to make demand upon the National Surety Company until the state has exercised to the fullest extent its right of priority. As there are sufficient funds in the hands of the state receiver (the secretary of banking) to pay the commonwealth in full if such priority claims were exercised, the surety company would be absolved from all payment if the plaintiff's claim were well founded.

The officers of the commonwealth take the position that they have the right to call on the surety company for full payment and then subrogate the surety company to the rights of the commonwealth to come in and claim against the fund pro rata with all the other depositors.

▌ The whole question has raised some very interesting problems, not the least of which is the question of jurisdiction. However, in view of all the cases cited by the parties, the court is assuming jurisdiction and will proceed to deal with the question on its merits. The arm of the court should never be interposed against an executive officer of the government, state or national, without evidence of clear disregard of law or constitutional rights. In this case the officers of the commonwealth of Pennsylvania were called upon to face such unusual conditions as may be called critical in our financial and industrial life. Banks were failing on every side, and only the wisest policies and conservative action on the part of those vested with responsibility could avert chaos. Undoubtedly, with these very grave responsibilities influencing them, the responsible state officials set out upon the task thrust upon them. They considered that under the law and the facts of the case they had two sources to which they could look for the return of the state moneys on deposit—to the closed banks themselves, and, thanks to wise legislation, to the extra security of the bonding companies.

▌ The testimony reveals that the state officials wisely took the precaution to set aside, under their right of priority, sufficient moneys of the assets of the banks to absolutely protect the commonwealth. They also called upon the bonding companies to make payment in full on their bonds. The bonding

companies, including the National Surety Company, have complied.

Do these acts constitute such an invasion of the constitutional rights or statutory laws that a stockholder of the National Surety Company should have the right to an injunction of a federal court? The stockholder-plaintiff claims that the officers of the commonwealth have substituted for the constitutional priority rights of the state a claim against the surety company under its bond. This cannot be conceded in view of the testimony that the state officials now have in their own hands and under their own control, sufficient money which they have set apart under their priority claims to pay the state in full, awaiting only the official turning it over to the state treasury.

■ Plaintiff also alleges that article 3, § 24, of the state Constitution has been violated. The section is as follows: "No obligation or liability of any railroad or other corporation, held or owned by the Commonwealth, shall ever be exchanged, transferred, remitted, postponed or in any way diminished by the General Assembly, nor shall such liability or obligation be released, except by payment thereof into the State Treasury."

The whole spirit of this section is for a different purpose—to accomplish an entirely different object, and only by a forced construction could it have reference to the instant case. Here the commonwealth officers are not releasing an obligation at all—they are demanding that an obligation be fulfilled. If the state has a claim against two corporations, one a defunct bank and the other a surety company, and the officials of the state propose to demand payment of the surety company and subrogate the surety company to the state's right against the bank, it cannot be accurately stated that such action constitutes a violation of the article and section of the state Constitution above quoted. Certain it is, however, that under these proceedings instituted by the state officials, the state cannot lose.

■ The plaintiff further claims that under the Fourteenth Amendment to the Constitution of the United States, he is entitled to relief. The amendment is as follows: "Nor shall any State deprive any person of life, liberty, or property, without due process of law."

It is difficult to see just wherein there has been a violation of the plaintiff's rights under this amendment. In the instant case the surety company had full and fair opportunity to write its own kind of contract in accordance with its own best interests under the circumstances of each case. Had the surety company desired to raise the question and insert a clause in the contract requiring the state to first exercise its priority privilege before claiming under the breach, and the commonwealth officers should have agreed to it, the contract could have been drawn accordingly. The fact that this was not done, does not make it now possible for a stockholder of the surety company to come forward and say that the courts should confer on him a privilege and a right that his own duly constituted board of directors evidently did not think it wise or expedient or necessary to obtain.

While on this question it is pertinent to call attention to the fact that the resident vice president testified on the witness stand that the rates charged by the surety company to the commonwealth of Pennsylvania were the same as the rates charged to persons and other corporations of a private nature on bonds of the same amount. This is evidence that the contracting parties never had in mind the question of the commonwealth of Pennsylvania first exercising its priority claim before calling upon the bonding companies to make good under their bonds. To adopt the reasoning of the plaintiff would permit the bonding companies to obtain premiums without assuming the risks and hazards of a surety. As a matter of fact, this is the first time that this question seems to have been raised, and it is but fair to state that the question is not being raised by the National Surety Company itself, but by one of its stockholders.

■ It is also alleged that the plaintiff's rights under the Fifth Amendment to the Constitution of the United States have been violated. The Fifth Amendment is as follows: "Nor shall private property be taken for public use, without just compensation."

The same reasoning that applied to the alleged violation of the plaintiff's rights under the Fourteenth Amendment apply here. The evidence shows that there was compensation at the regular rate for policies of like nature.

■ The status of the parties in this case is defined and governed by the case of South Philadelphia State Bank v. National Surety Company, 288 Pa. 301, 135 A. 748, 750, in which case Mr. Justice Simpson said: "The relation between the commonwealth and defendant was not that of principal and surety in the ordinary sense of those terms, but that of *insurer* and *insured*."

Under the bond the company is bound as *principal* upon breach. This is the crux of the whole case. Plaintiff claims there has been no breach. Defendant claims that when the Franklin Trust Company failed and was insolvent the breach was complete. The court feels that the breach was complete under the terms of the agreement when the trust company closed its doors, unable to pay its depositors in full. The breach having occurred, it thereupon became the duty of the state officials to protect the interests of the state to the best of their ability. Public policy naturally entered largely into the question in making up their decision as to the course to follow. The fact that the state officials, knowing the acute condition of public affairs, deemed it wise public policy to pursue the course they did, does not, in the absence of an actual violation of constitutional or legal rights, furnish a ground for the intervention of a court in equity.

Findings of Fact and Conclusions of Law.

Findings of Fact.

1. Defendant National Surety Company is principal on four bonds, dated respectively June 14, 1921, December 2, 1922, January 5, 1923, and March 14, 1928, aggregating $400,-000, and given to the Commonwealth of Pennsylvania to secure its deposits in Franklin Trust Company, Philadelphia, among the provisions of all of which bonds is included the following: "And in case of a breach of any of the conditions of the foregoing bond, the said surety holds itself bound as principal for any debts arising thereunder, in the amount aforesaid, and agrees to answer for the same without regard to and independently of any action taken against the said Franklin Trust Company of Philadelphia and whether the said Franklin Trust Company be first pursued or not."

2. Franklin Trust Company closed its doors and was taken into possession by the secretary of banking of the commonwealth of Pennsylvania on October 5, 1931.

3. There was on deposit in Franklin Trust Company on October 5, 1931, commonwealth of Pennsylvania funds aggregating $450,000, together with accrued interest due thereon.

4. On or about October 21, 1931, the state treasurer made formal demand on National Surety Company for the prompt payment of its share of the liability to the commonwealth of Pennsylvania for the said deposit of $450,-000, with interest.

5. On or about January 21, 1932, the state treasurer of Pennsylvania filed with the secretary of banking a claim for said $450,000 deposit, with interest, and asked that said claim be given a preference.

6. The other company, acting as surety for the commonwealth's deposits under the provisions of a bond or bonds similar in terms and purport to those of National Surety Company, has made payment as principal to the commonwealth of the sum of $50,-000, with interest due thereon.

7. National Surety Company, through its duly constituted officers acting with authority, has admitted its liability to the commonwealth for the payment before October 1, 1932, of the sum of $400,000, being the balance of the commonwealth's deposit in Franklin Trust Company, together with interest due thereon.

8. National Surety Company has at all times agreed to pay the commonwealth of Pennsylvania the full amount for which it is admittedly liable under its four bonds aggregating $400,000, and has not at any time refused to pay said amount or any part thereof or made any direct effort to avoid and escape liability to the commonwealth therefor.

9. The four depository bonds given by National Surety Company to secure deposits of the commonwealth of Pennsylvania are valid and subsisting contracts legally entered into, and National Surety Company has at all times admitted its legal liability thereunder.

10. National Surety Company gave to the commonwealth of Pennsylvania depository bonds, of character similar to those respecting Franklin Trust Company, to secure commonwealth deposits in Federal Title & Trust Company of Beaver Falls, Lancaster Trust Company, Agricultural Trust & Savings Company, Mid-Valley Trust Company, successor to Throop State Bank, and Mid-Valley Trust Company, successor to Olyphant Bank, all banking institutions of the commonwealth of Pennsylvania.

11. The commonwealth of Pennsylvania entered judgments against National Surety Company on its several bonds securing deposits in said institutions in the court of common pleas of Dauphin county, Pa., on October 5, 1932, prior to the filing of the supplemental bill of complaint in this proceeding.

12. The said judgments were entered by the commonwealth of Pennsylvania in accordance with the provisions in the bonds which are identical with those in the bonds of National Surety Company given to secure deposits of the commonwealth in Franklin Trust Company.

13. Neither William D. Gordon, Edward Martin, nor William A. Schnader has violated

or is violating or threatens to violate any law or any provision of the Constitution of the commonwealth of Pennsylvania.

14. The commonwealth of Pennsylvania has at no time released National Surety Company from any liability under any of the bonds given by it to secure commonwealth deposits in the banking institutions named and has at all times looked to the National Surety Company for payment of the full amount of said deposits with interest due thereon, secured by said bonds.

15. Depositories of funds of the commonwealth of Pennsylvania must be approved by the board of finance and revenue.

16. The state treasurer of Pennsylvania is the sole officer with authority to deposit funds of the commonwealth of Pennsylvania in institutions approved by the board of finance and revenue, and to make withdrawals therefrom.

17. The board of finance and revenue of the commonwealth of Pennsylvania has no authority to require the state treasurer to collect claims of the commonwealth, nor to direct him from whom to collect them.

### Conclusions of Law.

1. Complainant has not stated facts sufficient to constitute a cause of action in his favor.

.2. Complainant has no valid cause of action.

3. The contracts of the commonwealth of Pennsylvania with the National Surety Company were entered into legally and without fraud and are binding upon the parties thereto.

4. The bill of complaint and the supplemental bill show on their face that they are wholly without equity.

5. The granting of the relief sought by the complainant would adversely affect the rights of the commonwealth of Pennsylvania.

Let a decree be submitted dismissing the bill, with costs.